# EXHIBIT L

Case 1:07-cv-09696-LBS-DFE    Document 17-13    Filed 07/21/2008    Page 1 of 4

1 of 4 DOCUMENTS

Copyright 2007 Factiva  , from Dow Jones
All Rights Reserved

Dow Jones Factiva

(Copyright (c) 2007, Dow Jones & Company, Inc.)
THE WALL STREET JOURNAL.

The Wall Street Journal

November 2, 2007 Friday
Correction Appended

**SECTION:** Pg. A1

**LENGTH:** 1188 words

**HEADLINE:** Deals With Hedge Funds May Be Helping Merrill Delay Mortgage Losses

**BYLINE:** By Susan Pulliam

**BODY:**

Merrill Lynch & Co., in a bid to slash its exposure to risky mortgage-backed securities, has engaged in deals with hedge funds that may have been designed to delay the day of reckoning on losses, people close to the situation said.

The transactions are among the issues likely to be examined by the Securities and Exchange Commission. The SEC is looking into how the Wall Street firm has been valuing, or "marking," its mortgage securities and how it has disclosed its positions to investors, a person familiar with the probe said. Regulators are scrutinizing whether Merrill knew its mortgage-related problem was bigger than what it indicated to investors throughout the summer.

In one deal, a hedge fund bought $1 billion in commercial paper issued by a Merrill-related entity containing mortgages, a person close to the situation said. In exchange, the hedge fund had the right to sell back the commercial paper to Merrill itself after one year for a guaranteed minimum return, this person said.

While the Merrill-related entity's assets and liabilities weren't on Merrill's own balance sheet, Merrill might have been required to take a write-down if the entity was unable to sell the commercial paper to other investors and suffered losses, the person said. The deal delayed that risk for a year, the person said.

In a statement, a Merrill Lynch spokeswoman said, "We don't comment on specific transactions and we are confident in the appropriateness of our marks."

At issue with any hedge-fund deals is whether there was an attempt by Merrill to sweep problems under the rug through private transactions kept out of view from investors. Some previous scandals, such as the collapse of Enron Corp. and the troubles of Japan's financial system in the 1990s, involved efforts to hide problems through off-balance-sheet transactions.

Merrill has become ground zero of mortgage problems in the U.S. Last week, the firm announced a $7.9 billion write-down fueled by mortgage-related problems -- one of the largest known Wall Street losses in history -- after projecting just a few weeks earlier that the write-down would be $4.5 billion. Merrill also took a $463 million write-down, net of fees, for deal-related lending commitments, bringing the firm's total third-quarter write-down to $8.4 billion.

A few days after the announcement, it ousted Stan O'Neal, its chief executive. Some analysts and others say they expect Merrill to take additional write-downs of roughly $4 billion in the fourth quarter.

Deals With Hedge Funds May Be Helping Merrill Delay Mortgage Losses The Wall Street Journal November 2, 2007 Friday Correction Appended

The rapid widening of Merrill's losses has led investors to wonder whether other banks and brokerages have a good grasp of their exposure to bad debt. Bank shares fell sharply yesterday, contributing to a 2.6% fall in the Dow Jones Industrial Average. Merrill's shares fell $3.83, or 5.8%, to $62.19 in 4 p.m. trading on the New York Stock Exchange.

Merrill's deals have attracted the interest of some mortgage investors and specialists.

"Merrill has been making the rounds asking hedge funds to engage in one-year off-balance-sheet credit facilities," Janet Tavakoli, who consults for investors about derivatives, told clients in a recent note. "One fund claimed that Merrill was offering a floor return (set buy-back price)," she said in the note, "so this risk would return to Merrill." Ms. Tavakoli said such transactions would explain how Merrill's mortgage-related exposure dropped in the third quarter.

In recent weeks, Merrill has been scrambling to line up hedge funds to take as much as $5 billion in mortgage-related securities, people close to the situation said, part of what Merrill executives refer to as a "mitigation strategy." Under the strategy, which started earlier this year, Merrill has tried several means of lowering the risk of its exposure to mortgage-backed securities, these people say.

In accounting for such transactions, "the general guiding principle is whether the benefits and risks of ownership were transferred," says Charles Niemeier, former chief accountant for the SEC's enforcement division and now a director of the Public Company Accounting Oversight Board. Legal questions can arise if the seller retains some exposure to the risk of the assets losing value, and if the deal is designed to disguise the picture of a business's financial health.

Jay Gould, a securities lawyer at Pillsbury Winthrop Shaw Pittman LLP, says if a firm is unloading securities from its books "without a real commercial purpose other than to create a value for pricing purposes, that can be a problem."

Other big securities firms with mortgage-related losses have arranged similar deals with hedge funds. As disclosed in a recent page-one article in The Wall Street Journal, Bear Stearns Cos. sold $1 billion of risky mortgage loans to a hedge fund under a one-year pact known as a "mandatory auction call." Bear Stearns agreed to participate in an auction for the loans that provided the hedge fund with a guaranteed minimum return.

Three big U.S. banks are assembling a group of financial institutions to create an investment pool to buy some mortgage-related securities from "structured investment vehicles" that are being forced to sell. That effort, which is backed by the Treasury Department, has also led some investors to question whether the goal is to delay the point at which banks recognize losses on troubled assets. The banks say their aim is to forestall forced selling of the assets.

In mid-July, before the credit crunch worsened, Merrill reported better-than-expected earnings with little impact from exposure to mortgage-backed securities. Asked about the firm's mortgage position on a call with analysts, Merrill Chief Financial Officer Jeff Edwards said: "Proactive aggressive risk management has put us in an exceptionally good position." Two weeks later, Mr. O'Neal personally sent an email to Merrill employees assuring them the firm had such risks well in hand.

One source of problems was the First Franklin mortgage company, which Merrill bought in December 2006. First Franklin catered to subprime, or less credit-worthy, borrowers. Subprime loans have fallen sharply in value this year due to rising default rates.

Another source was Merrill's underwriting of collateralized debt obligations, which are securities backed by pools of assets including mortgages. Merrill ranked No. 1 in the area from 2004 through 2006.

By the end of June 2007, Merrill had CDO exposure of $32.1 billion and a subprime-mortgage exposure of $8.8 billion, totaling $40.9 billion. Much of the CDO exposure was in triple-A rated "super senior" slices. These were supposed to enjoy strong protection against defaults, but they began to decline steeply in price in late July.

By the end of September, Merrill says it reduced such positions through sales, hedges and write-downs to $15.2 billion of CDOs and $5.7 billion of subprime mortgages, a total of $20.9 billion. The write-downs totaled $6.9 billion for CDOs and $1 billion for subprime mortgages.

---

Randall Smith contributed to this article.

License this article from Dow Jones Reprint Service

**NOTES:**

Deals With Hedge Funds May Be Helping Merrill Delay Mortgage Losses The Wall Street Journal November 2, 2007 Friday Correction Appended

PUBLISHER: Dow Jones & Company, Inc.

**CORRECTION:**

Corrections & Amplifications

On Nov. 2, the Journal published a page-one article on Merrill Lynch & Co. that was based on incorrect information that the firm had engaged in off-balance-sheet deals with hedge funds in a possible bid to delay the recognition of losses connected to the firm's mortgage-securities exposure. In fact, Merrill proposed a deal with a hedge fund involving $1 billion in commercial paper issued by a Merrill-related entity containing mortgage securities. In exchange, the hedge fund would have had the right to sell the mortgage securities back to Merrill after one year for a guaranteed minimum return. However, Merrill didn't complete the deal after the firm's finance department determined it didn't meet proper accounting criteria. In addition, Merrill says it has accounted properly for all its transactions with hedge funds.

(WSJ Nov. 26, 2007)

(END)

**LOAD-DATE:** November 26, 2007